# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

UNITED STATES OF AMERICA, *ex rel.*, EVA FIEDERER, *et al.*,

        Plaintiffs,

vs.

HEALING HEARTS HOME CARE, INC, *et al.*,

        Defendants.

Case No. 2:13–cv–1848–APG–VCF

**ORDER**

     This matter involves Eva Fiederer's *qui tam* action against Healing Hearts Home Care, Inc., Julius Fuentebella, and Dr. Brian E. Lee. (Compl. 1#).[1] Before the court is Fiederer's Motion to Compel (#30). Defendants filed an opposition (#31); and Fiederer replied (#34). For the reasons stated below, Fiederer's Motion to Compel is granted.

## BACKGROUND

     Eva Fiederer is a registered nurse. (Compl. (#1) at ¶ 4). On May 14, 2013, she began working at Healing Hearts Home Care, Inc. (*Id.* at ¶¶ 5, 30). On her first day of work, Healing Heart's billing and administrative assistant, "Mama Mers," instructed Fiederer that every patient's chart should indicate that the patient is hard of hearing, incontinent, homebound, confused, and is visually impaired, regardless of the patient's actual condition. (*Id.* at ¶ 31). "Mama Mers" also told Fiederer that every Healing Hearts employee, including its physician, receives a $500.00 bonus for new patient referrals. (*Id.* at ¶ 32).

     Fiederer began seeing patients the next day. (*Id.* at ¶ 33). Her duties included visiting patients, treating patients, and completing patient charts. (*Id.*) After visiting the last patient for the day, Fiederer's chart work was reviewed by Healing Heart's director, Julius Fuentebella. (*Id.* at ¶ 34). Fuentebella told

---

[1] Parenthetical citations refer to the court's docket.

Fiederer that her charts required revision. (*Id*.) The problem: Fiederer's charts did not reflect the general rule instituted by Fuentebella: "We have to have a reason to be seeing the patient." (*Id*.) Fuentebella directed Fiederer to revise her charts in accordance with this rule.

For instance, on one patient's chart, Fiederer noted that the patient declined service from Healing Hearts because Healing Hearts does not employ a physical therapist who will travel to Henderson, Nevada. (*Id*. at ¶ 35). In this case, Fuentebella stated that Fiederer should remove the sentence stating that Healing Hearts does not employ a physical therapist who will travel to Henderson. (*See id*.) In its place, Fuentebella told Fiederer to simply write that the "patient refused service." (*Id*.) Fiederer believes that Healing Hearts then submitted the revised chart to a Medicare carrier for reimbursement under the Medicare Program. (*Id*. at ¶ 36).

On May 28, 2013, Fiederer completed two additional charts in connection with patient visits. (*See id*. ¶¶ 37–42). Again, Fuentebella instructed Fiederer to revise her charts in accordance with the general rule that "[w]e have to have a reason to be seeing the patient." (*See id*.) In both cases, Fiederer visited the patient to administer medicine. But, in both cases, Fiederer discovered that there was no medication to administer. (*Id*. at ¶¶ 38, 41). Fiederer noted this fact in the patients' charts. (*Id*.) Fuentebella objected. He stated that if Healing Hearts submits documentation indicating that the there was no medication to administer, then "it might be understood that [Healing Heart's service] was not needed." (*Id*.)

Fiederer believes that Healing Hearts then submitted the revised charts to a Medicare carrier for reimbursement under the Medicare Program. (*Id*. at ¶¶ 39, 42). Fiederer also believes that one of Healing Heart's physicians, Dr. Lee, received a $1,000.00 bonus for referring these patients to Healing Hearts for treatment. (*Id*. at ¶¶ 37, 40). These actions, combined with similar conduct by Healing Hearts' employees with regard to other patients, led to Fiederer's resignation, effective June 11, 2013. (*Id*.

at ¶¶ 43–60). Fiederer's employment at Healing Hearts lasted just twenty-eight days. (*Id.* at ¶¶ 30, 54).

On October 10, 2013, Fiederer commenced this *qui tam* action. She alleges that Healing Hearts, Fuentebella, and Dr. Lee violated the False Claims Act, 31 U.S.C. § 3729, and Nevada's False Claims Act, NEV. REV. STAT. § 357.040(1), in connection with their billings practices. Under Title VII of the Social Security Act, 42 U.S.C. §§ 1935, *et seq.*, which is popularly known as Medicare, healthcare providers must certify that documentation submitted in support of requests for reimbursement are accurate. *See* 42 C.F.R. § 483.20. If, as Fiederer alleges here, Healing Hearts knowingly submitted inaccurate documentation for reimbursement, then it may be liable under the False Claims Act. *See United States v. Prabhu*, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006) (citing *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001)) (outlining the elements of False-Claims-Act liability). The False Claims Act contains a six-year statute of limitations. *See* 31 U.S.C. § 3731(b)(1).

Now, the parties are in the midst of discovery. On May 22, 2014, Fiederer served Healing Hearts, Fuentebella, and Dr. Lee with her First Set of Requests for Production of Documents. (Bessel Aff. (#30) at ¶ 4). Two requests are contested here. (*Id.* at 1: 22–23). The first seeks "all of your patient intake records [. . .] for six (6) years from the date [Fiederer] filed the Complaint (October 10, 2013) to present." (*Id.* at 5: 4–7). The second seeks "all records evidencing any and all payments you made to Dr. Brian Lee." (*Id.* at 6:13–14).

Because Fiederer worked at Healing Hearts for just twenty-eight days, Defendants produced responsive documents for that time period only. Following a failed meet and confer, Fiederer filed the instant Motion to Compel, arguing that the False Claims Act's statute of limitations entitles her to six-years of documents. Defendants oppose Fiederer's motion, asserting that Fiederer must plead actual knowledge regarding Defendants' actions during the six-year period to be discoverable. This order follows.

3

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. In pertinent part, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 defines relevant information as any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The Supreme Court states that Rule 26 affords liberal discovery. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery "serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Where—as here—a party resists discovery, the requesting party may file a motion to compel. Rule 37 governs motions to compel, and provides that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33" or "fails to respond" to a request under Rule 34. Before moving to compel, Rule 37 requires the movant to include a certification that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery before seeking judicial intervention. FED. R. CIV. P. 37(a)(1); *see also* LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc*., 170 F.R.D. 166, 171 (D. Nev. 1996) (discussing the District of Nevada's meet-and-confer requirements).

The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, or irrelevant. *Teller v. Dogge*, No. 2:12-cv-00591-JCM, 2013 WL 1501445 (D. Nev. Apr. 10, 2013) (Foley, M.J.) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000).

To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999).

4

Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id*. (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1986) (objecting party must show a particularized harm is likely to occur if the requesting party obtains the information that is the subject of the particular objections; generalized objections are insufficient)).

Therefore, the party opposing discovery must allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request. *Jackson v. Montgomery Ward & Co., Inc*., 173 F.R.D. 524 (D. Nev. 1997) (citations omitted); *Cory v. Aztec Steel Bldg*., Inc., 225 F .R.D. 667, 672 (D. Kan. 2005).

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Diamond State Ins. Co. v. Rebel Oil. Inc*., 157 F.R.D. 691, 696 (D. Nev.1994). The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc*., 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118 (1982).

**DISCUSSION**

The heart of the parties' dispute presents one question: whether the temporal scope of her right to discovery is controlled by the False Claims Act, which contains a six-year statute of limitations, or the duration of her employment at Healing Hearts, which was twenty-eight days.[2] Before addressing this question, the court begins its analysis by reviewing the False Claims Act.

---

[2] (*See* Def.'s Opp'n (#31) at 4:23–28) ("If Plaintiff Fiederer's position were accepted by this Court, a person could go to work for one day at any (relevant) medical company that bills the government, claims fraudulent/illicit billing, and obtain billing records for six years.").

**I.     The False Claims Act, 31 U.S.C. §§ 3729, *et seq*.**

The False Claims Act was "enacted during the Civil War with the purpose of forfending widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 995 (9th Cir. 2010) (citation omitted); *see also United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995) (citing S. Rep. No. 99–345, 99th Cong., 2d Sess. 8, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273)). To encourage insiders to disclose fraud, the Act contains a *qui tam* provision that permits private persons (i.e., "relators") to bring civil actions on behalf of the United States and claim a portion of any award. *See* 31 U.S.C. § 3730(b), (d). A cause of action under the False Claims Act exists to vindicate the government's rights, *see* S. Rep. No. 99–345, by "attach[ing] liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *Rivera*, 55 F.3d at 709.

The Act's *qui tam* provision is for insiders. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). It was not enacted "to create windfalls for people with secondhand knowledge of the wrongdoing." *U.S. ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003). Accordingly, a *qui tam* complaint will only unlock the doors of discovery if it complies with Federal Rule of Civil Procedure 9(b) heightened pleading standard. This requires the relator to allege "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). As stated by the Third Circuit, "[t]he purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (citing *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)).

**II.     Whether Discovery is Limited by the Duration of a Relator's Employment**

Fiederer's Motion to Compel is granted for four reasons. First, Rule 26(b)(1) permits parties to obtain discovery regarding any nonprivileged matter that is "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Here, Fiederer asserts claims under the False Claims Act, which—as discussed above—exists to vindicate the government's rights by attaching liability to fraudulent claims for payment. The two disputed discovery requests seek information that is directly relevant to the government's right to prosecute fraudulent claims. The first request seeks "all of your patient intake records [. . .] for six (6) years from the date [Fiederer] filed the Complaint (October 10, 2013) to present." (Pl.'s Mot. to Compel (#30) at 5:4–7). The second request seeks "all records evidencing any and all payments you made to Dr. Brian Lee." (*Id*. at 6:13–14).

The court is unpersuaded by Defendants' argument that the scope of discovery permitted under Rule 26 should be limited to the duration of a relator's employment. (*See* Def.'s Opp'n (#31) at 4:23–28) ("If Plaintiff Fiederer's position were accepted by this Court, a person could go to work for one day at any (relevant) medical company that bills the government, claims fraudulent/illicit billing, and obtain billing records for six years."). Rule 26 focuses on the party's "claim or defense," and the False Claims Act empowers private individuals to step into the government's shoes and litigate claims on the government's behalf. *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government."). Limiting a relator's discovery rights to the duration of her employment would weaken the Act by placing limits on *qui tam* actions that do not exist for government-initiated actions. Additionally, it would dissuade whistleblowing by limiting a relator's claim, not to the plausible allegations regarding the submission of false claims—which is the Act's focus—but to the duration of the relator's employment, on which the Act is silent.

7

Second, Defendants do not dispute that Fiederer's discovery requests seek information that is relevant to her claims. (*See generally* Def.'s Opp'n #31). Rather, the bulk of Defendants' opposition is that Fiederer's complaint does not satisfy Rule 9(b)'s heightened pleading requirements. This argument is misplaced. When examining a motion to compel, the court's inquiry is limited to a relevance examination under Rule 26(b)(1) and whether the party resisting discovery demonstrated that the discovery request is overly broad, unduly burdensome, or irrelevant. A party may resist discovery by arguing that the complaint is insufficient pled. *See, e.g.*, *Tradebay, LLC v. eBay, Inc*., 278 F.R.D. 597, 601–04 (D. Nev. 2011); *Bacon v. Reyes*, No. No. 2:12–cv–01222–JCM–VCF, 2013 WL 5522263, at *2–*3 (D. Nev. Oct. 3, 2013). But, this requires the existence of a pending motion to dismiss and a motion to stay discovery pending resolution of the motion to dismiss. Neither motion has been filed in this case.

Third, assuming, *arguendo*, that Defendants were litigating a motion to stay pending resolution of a motion to dismiss, the court would be unpersuaded by the arguments offered here. Rule 9(b) and the False Claims Act do not require a relator to allege "all facts supporting each and every instance" of billing fraud. *Ebeid*, 616 F.3d at 999. The "use of representative examples" suffices. *Id*. at 998 (adopting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Here, Fiederer provided just that. The complaint alleges four examples of billing fraud that occurred on May 15, 2013, May 28, 2013, June 4, 2013, and June 7, 2013. (Compl. (#1) at ¶¶ 33–55).

The complaint also alleges that the billing fraud occurred because of Healing Heart's unwritten policy to alter patient charts. Fiederer alleges that "Mama Mers" (1) instructed Fiederer to alter patient charts to reflect that each patient is hard of hearing, incontinent, homebound, confused, and is visually impaired and (2) told Fiederer that every Healing Hearts employee, including physicians, receives a $500.00 bonus for new patient referrals. (Compl. (#1) at ¶¶ 31–32). The complaint also alleges that Fuentebella altered patient charts to indicate that Healing Hearts has "a reason to be seeing the patient."

8

(*Id*. at ¶ 34). These allegations satisfy Rule 9(b) because they notify the Defendants of the "precise misconduct." *Bly-Magee*, 236 F.3d at 1018.[3]

Defendants argue that Fiederer's complaint and discovery requests are objectionable because it pleads allegations on "'information and belief,' with no supporting facts of any type." (Def.'s Opp'n (#31) at 3:3–4). This is inaccurate. Fiederer's detailed allegations regarding "Mama Mers" and Fuentebella's training and unwritten policies and procedures to alter patient records provides a plausible allegation that the alleged illicit activity occurred in the past. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (stating that a plaintiff relying on "information and belief" must state the factual basis for the belief); *see also Sanderson v. HCA-The Healthcare Co*., 447 F.3d 873, 878 (6th Cir. 2006) (citing *United States ex rel. Thompson v. Columbia/CHA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997) ("[A]lthough courts have permitted allegations of fraud based upon 'information and belief,' the complaint 'must set forth a factual basis for such belief,' and the allowance of 'this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.")). Because Fiederer's complaint alleges illicit activity with specificity and detail, and because Fiederer now seeks discovery related to those allegations, the court is not persuaded by Defendants' argument that she is engaged in a fishing expedition.

Fourth, Defendants also oppose Fiederer's requests for six years of record medical records, arguing that "it is clear that [individual] Defendants herein were not involved with Healing Hearts until after April, 2011." (Def.'s Opp'n (#31) at 3:10–11). This argument fails as a matter of law. Healing Hearts is a named Defendant. It is black-letter law that a new corporation is liable for the debts of an old

---

[3] These allegations contrast significantly with the insufficient pleading allegation in *Bly-Magee*. There, the relator alleged "[Defendant] concealed the fraudulent submission of false claims . . . to avoid repayment of funds to the United States" and conspired with others to "defraud the United States by obtaining payment of fraudulent claims." *Id*. the Ninth Circuit held that "[t]hese broad allegations included no particularized support detail." *Id*.

corporation if the succession is just one of form so that the new corporation "is in reality, however it may be in law, a mere continuation of the old corporation." 15 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 7329 (1990).

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Eva Federer's Motion to Compel (#30) is GRANTED.

IT IS SO ORDERED.

DATED this 18th day of September, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE